CALLAHAN v. INDUSTRIAL COMMISSION et al.

No. 6538.   Decided June 24, 1943.   (139 P. 2d 214.)

See 71 Corp. Jur., Workmen's Compensation Acts, sec. 1120; 28 R. C. L. 827 (8 Perm. Supp., 6252; Supplement, 2873).

*Warwick C. Lamoreaux,* of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., *Zar E. Hayes,* Asst. Atty. Gen., and *F. A. Trottier,* of Salt Lake City, for defendants.

MOFFAT, Justice.

On certiorari to the Industrial Commission. Plaintiff, on April 16, 1942, filed with the Commission an application

for Workmen's Compensation benefits. He claims therein that on May 22, 1939, he was a tile-setter in the employ of Elias Morris & Sons Company and on that date "While in the act of pulling up" "brick, mortar and lumber on top of the company warehouse at 250 E. So. Temple" in Salt Lake City "I felt a pain in my right groin, followed by a soreness which resulted in a hernia"; that he left work on April 13, 1942, and the disability was "still continuing"; that at the request of his employer he was examined by a doctor in 1939 and on April 12, 1942. After a hearing, the Commission found, on June 11, 1942, "that applicant did not sustain an accident, resulting in a hernia, arising out of or in the course of his employment," and denied compensation. The jurisdictional facts were admitted. Plaintiff, on July 13, 1942, filed an application for a rehearing, giving the following reasons therefor:

"New Evidence Has Been Discovered; which will prove from the books and records of the above company, and from the Physician who treated applicant immediately after the alleged injury was sustained, the dates when said injury occurred.

"Evidence has been discovered that should be presented to the commission that applicant, immediately after the injury was received, complained to a fellow workman of said injury. Complaint was also made immediately to the manager, both of whom will be called to testify at the rehearing.

"The physician who treated applicant will testify as to his findings and treatment at the time and immediately after the alleged injury.

"Persons connected with the Industrial Commission indicated to applicant that he should not immediately press his claim, but should wait and see what happened; applicant was 'lulled into a sense of security' by members of the former Industrial Commission. Applicant has endured the pain incident to his injury until it became unbearable and by the representations of the commission and its servants, the applicant, contacting the commission without the aid of counsel, should not be held to have lost or waived his rights."

On July 16, 1942, this application for rehearing was denied, following which, and on August 13, 1942, plaintiff filed with the Commission a "Supplemental Application

For Rehearing" with three affidavits attached, one by himself, one by Dr. L. A. Stevenson, his attending physician, and a third by James A. White, a fellow employee at the time the accident and injury were alleged to have occurred. No action was taken by the Commission on this "Supplemental Application" and plaintiff, on August 15, 1942, applied to this court for a writ of review.

At the hearing before the Commission on May 28, 1942, neither of the parties was represented by counsel, although the notice of the hearing sent out by the Commission contains at the bottom thereof:

"Note—Either party shall have the right to be present at any hearing, in person or by attorney or by any other agent, and to present such testimony as may be pertinent."

Plaintiff testified that,

"We were putting a crown on the warehouse building, putting a crown on top of this building to protect it, sort of a fire wall. In addition to that there is top lights in the old building and we put some lumber on top of that and enclosed it in to leave an opening there so we could pass through under the top of that building. In endeavoring to put a crown onto it and while raising this mortar—the only way that we could bring the mortar up and that was to lower a rope down and pull the mortar and brick, and material up over the side";

that it would be difficult to say how much they pulled up at a time, the buckets were rather large, and the mortar at times would weigh over a hundred pounds; could not say about the weight of the lumber; one man could pull it; they did not use a pulley;

"In pulling this up I rather felt a soreness, I don't recall other than kind of a real sore feeling appeared first, just like you would have a small cut like you have on your hand or a sore on your hand and salt get in it. That is about the only thing I could feel"; "The first time I recall was when I was doing that job of work."

Plaintiff was unable to fix a date certain as to when this incident occurred, stating that he "assumed" it hap-

pened on the date stated in his application. He testified that he went to the doctor the day following, or no more than two days after he first noticed it,

"because it got so annoying, especially at night, I got one of these athletic straps * * * I didn't keep a definite date on it. I was always under the impression they had a record at the Capitol Building on that";

that Mr. Brown was foreman and knew definitely about it; that he talked to a clerk, Mr. Edwin Circuit, in the company office who sent him to Mr. Morris, and the latter sent him to Dr. Stevenson; that he had not had the rupture taken care of because

"When I came to the Capitol I went to Dr. Stevenson and he wanted to operate the following day, and he said, 'You go to the Capitol Building and have it cleared.' When I went to the Capitol Building they told me to go to see another doctor which I also did but they said if I didn't want to have it taken care of right then I could wait";

that he kept right on working; put a strap on and worked that way for quite awhile; that he continued to work from May 22, 1939, to April 13, 1942, and was off for "a full week or better" after April 13, 1942, because it was so bad I just could not work at all"; that he received no compensation for that week, and the doctor had not sent a bill for his services.

On cross-examination by a claims adjuster of the State Insurance Fund, plaintiff further testified that the week he took off was that following April 13, 1942; he could not say definitely whether he had lost any other time between May 22, 1939, and April 13, 1942. Plaintiff then tried to fix the date but admitted he had kept no record of it, and was not sure that May 22, 1939, was the correct date. Neither could he remember what job he was engaged on before this roof job, nor what he did immediately after. He then testified that it could have happened in 1938, but that he was definitely certain it could not have occurred in 1940.

The office manager of the employer was then called by the State Insurance Fund adjuster and testified from the office payroll record that from May 12th to June 7th, 1939, plaintiff was engaged on work at the South Jordan High School and not on company property.

Plaintiff cites and relies on the case of *Gagos* v. *Industrial Commission,* 87 Utah 92, 39 P. 2d 697, contending that it is authority for the rule that inability of an applicant to fix the exact date of an injury resulting in a compensable hernia will not defeat an award of compensation. The decision cited, however, was reversed on rehearing in 87 Utah 101, 48 P. 2d 449.

Sec. 42-1-76, of the Workmen's Compensation Act, U. C. A. 1943, provides that:

"Any party including the commission of finance to a proceeding before the commission may, and before he can seek a review in the Supreme Court shall within thirty days after written notice of its decision file an application before the commission for a rehearing of the matter."

Plaintiff filed such an application, apparently in time, as no objection is raised on that ground, and made offer of further testimony. The Commission saw fit to deny the application. Plaintiff then filed with what he terms a "Supplemental Application," three affidavits containing the proffered additional evidence. This was simply a second petition for rehearing, for which there is no authority in law. The statute above quoted is jurisdictional, and the Commission was warranted in disregarding this untimely "Supplemental Application." *Ferguson* v. *Industrial Commission,* 63 Utah 112, 221 P. 1099, wherein it is said:

"The first petition for rehearing having been denied on May 8, 1922, the jurisdiction of the Industrial Commission ceased. It was then incumbent upon the applicant to apply to this court within 30 days for a writ of review or to abide by the decision. *Salt Lake City* v. *Industrial Commission.* [61 Utah 514], 215 P. 1047."

Regardless of whether we might feel that, under the unfortunate circumstances of plaintiff appearing at the hearing without counsel or other representation, and being unprepared to properly present his case at that time, the showing made through counsel by his application for a rehearing was sufficient to justify the granting of a rehearing for a more thorough examination of available evidence, the Commisison found as a fact on the conflicting testimony in the record that plaintiff "did not sustain an accident, resulting in a hernia, arising out of or in the course of his employment." The Commission having so acted, on substantial, competent evidence, we cannot say as a matter of law that the decision should have been otherwise. This principle has been repeatedly announced in Industrial Commission cases.

The decision of the Commission denying compensation must be, therefore, and is hereby affirmed.

WOLFE, C. J., and LARSON, McDONOUGH, and WADE, JJ., concur.